

**SEAN GORTON**
(516) 357-3319
sean.gorton@rivkin.com

May 13, 2021

**VIA ECF**
Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Government Employees Ins. Co. v. Zilberman, D.C., et al.*
             <u>Docket No. 1:20-cv-00209(FB)(RML)</u>

Dear Judge Block:

This firm represents Plaintiffs (collectively "GEICO" or "Plaintiffs") in this matter, and respectfully submits this letter in accordance with Your Honor's individual rules requiring a pre-motion conference letter in advance of formal motion practice. GEICO respectfully requests leave to file a motion, pursuant to Fed. R. Civ. P. 15, 16, and 21, requesting leave to file an amended complaint naming Yakov Kruglyak ("Kruglyak") as, among other things, a RICO co-conspirator with the current defendants. Notably, all of the Defendants, Yan Z Chiropractic, P.C. ("Yan Z"), Maz Chiropractic, P.C. ("Maz"), Sanford Chiropractic, P.C. ("Sanford"), Dos Manos Chiropractic, P.C. ("Dos Manos") (collectively, the "PC Defendants"), and Yakov Zilberman, D.C. ("Zilberman")(together with the PC Defendants, the "Defendants"), have consented to filing the amended complaint. A copy of the proposed amended complaint is annexed hereto as Exhibit "1".

As set forth below, through extensive non-party discovery that included multiple discovery motions, an extensive review of financial records, and multiple depositions, Plaintiffs have unearthed Kruglyak as one of the Complaint's "John Doe Defendants" whose identity was previously unknown to GEICO but who has now been revealed as one of the unlicensed individuals who knowingly participated in the fraudulent scheme, including assisting in the operation of Zilberman's transient chiropractic operations and participating in an illegal check-cashing ring involving forged letters from the Internal Revenue Service and false corporate resolutions, in furtherance of an illegal patient referral scheme. Accordingly, Plaintiffs seek leave to file an amended Complaint substituting Kruglyak for the John Doe Defendants as a RICO co-conspirator and aider and abettor who, among other things, assisted with the operation of Zilberman's transient, fraudulent chiropractic "practices" and accepted hundreds of thousands of dollars in kickbacks from the Defendants in exchange for patient referrals. <u>See</u> Ex. 1 at ¶¶ 3-4, 19, 57-83, 241-247, 261-268, 276-282, 296-303, 311-317, 331-338, 346-352, 366-373.

GEICO initially commenced this action to recover more than $1,000,000.00 that the Defendants wrongfully obtained from GEICO by engaging in a complex scheme involving the submission of thousands of fraudulent "no-fault" insurance charges relating to medically unnecessary and illusory healthcare services. See Docket No. 1, passim. Defendants, among other things, purported to provide these illusory healthcare services to GEICO's insureds at various "no-fault" medical clinics located in Brooklyn, Queens, and the Bronx, where unlicensed laypersons dictated fraudulent treatment protocols and collected kickback payments for patient referrals. See id. at ¶¶ 38-73. The Complaint filed by GEICO names John Doe Defendants "1"-"10", who are described as individuals who furthered Defendants' fraudulent scheme by, among other things, referring patients to Defendants in exchange for kickbacks and spearheading the fraudulent protocols used to render medically unnecessary services. See id. at ¶¶ 5, 17, 54-55, 83, 111, 184, 193. Plaintiffs now seek to amend the Complaint in order to substitute Kruglyak for the John Doe Defendants.

The Case Management Order in this case adopted by Magistrate Judge Levy set September 18, 2020 as the deadline to amend the pleadings. See May 28, 2020 Minute Entry; Docket No. 21-1. Plaintiffs worked diligently to obtain necessary discovery, but have had to break through multiple layers of concealment and work through apparent false deposition testimony from multiple witnesses. Plaintiffs also faced numerous delays in discovery by both Defendants and non-parties – many of which required court intervention. For example, Plaintiffs served Fed. R. Civ. P. 45 document subpoenas on various financial institutions. Defendants filed a motion to quash these subpoenas, which Magistrate Judge Levy subsequently denied. See May 28, 2020 Order. Plaintiffs subsequently obtained the pertinent corporate bank records, which revealed, among other things, that Defendants issued over $220,000.00 worth of checks to 16 different entities – which it turns out were cashed at one of two check cashing facilities in New Jersey – Blake Corp. and Cambridge Clarendon LLC d/b/a United Check Cashing ("Cambridge Clarendon"). See Docket No. 31 at * 2. After discovering this information, Plaintiffs promptly issued subpoenas to Blake Corp. and Cambridge Clarendon, however, neither check cashing facility complied with the subpoenas and Plaintiffs were forced to file a motion to compel. See Docket No. 25. Magistrate Judge Levy subsequently granted the motion to compel and the check cashing facilities complied with the document subpoenas on or about August 25, 2020 – approximately three weeks before the deadline to amend the pleadings. See Aug. 11, 2020 Order.

Plaintiffs subsequently learned that many of the above-referenced checks were cashed using forged letters from the Internal Revenue Service and false corporate resolutions. For example, Defendants issued $69,800.00 worth of checks to the Narain Law Firm, P.C. that were cashed at Cambridge Clarendon. However, the sole owner of the Narain Law Firm, P.C. has sworn that: (i) she has never heard of Defendants; (ii) the Narain Law Firm, P.C. never represented any of the Defendants; and (iii) all of the checks were cashed using a false tax identification number and false corporate resolution. See Docket No. 31-1. Against this backdrop, in early November 2020 – approximately two months after the deadline to amend pleadings had passed – Plaintiffs secured sworn declarations from the owner/manager of Blake Corp. and Cambridge Clarendon, both of whom identified Alla Kuratova as the individual responsible for cashing all of the above-referenced checks. See Docket Nos. 32-2, 32-3. With this information, Plaintiffs deposed Ms. Kuratova on December 7, 2020. See Docket No. 32-4. However, Ms. Kuratova testified that she had never been to or even heard of Blake Corp. or Cambridge Clarendon. See Docket No. 32 at * 2.

Following all of this, on December 15, 2020 – approximately three months after the deadline to amend pleadings had passed – Plaintiffs deposed Kruglyak. Plaintiffs originally sought Kruglyak's deposition because: (i) Defendants paid over $110,000.00 worth of checks to W.I.P. Holding, Inc. – a company owned by Kruglyak; and (ii) many of these checks were cashed at the above-referenced check cashing facilities. See Ex. 1, at ¶ 63. Kruglyak's testimony was often purposely vague, testifying for example that he gave an individual named "Eugene" multiple checks to be cashed at the above-referenced check cashing facilities, but claiming he did not know Eugene's last name; he delivered the checks to Eugene somewhere on "the streets" in Brooklyn; and he had no way of contacting Eugene. Kruglyak also testified he delivered certain checks to Eugene at Defendant Zilberman's behest and that some checks he delivered to "Eugene" were made out to W.I.P. Holding, Inc. It turns out the checks to W.I.P. Holding, Inc. were cashed at Cambridge Clarendon using a forged IRS letter and false corporate resolution. See Ex. 2 at 15:10-20:23, 37:14-46:9.

Plaintiffs were obviously skeptical of Kruglyak's vague testimony but the complex nature of the financial transactions, as well as the prior testimony from Ms. Kuratova that she had never been to or heard of Blake Corp. or Cambridge Clarendon, led GEICO to seek additional information from the owners/managers of Blake Corp. and Cambridge Clarendon before seeking to amend the complaint. After significant delays, the manager of Cambridge Clarendon – Jerome Reed – appeared for a deposition on April 1, 2021. Mr. Reed's testimony contradicted Ms. Kuratova's prior denials and underscored the implausibility of Kruglyak's testimony regarding: (i) the existence of "Eugene" and (ii) Kruglyak's limited involvement in the illegal check-cashing scheme.

Plaintiffs received a copy of Mr. Reed's deposition transcript on or about April 20, 2021. Plaintiffs, after assessing his testimony, comparing it to the prior depositions, and assessing all of the evidence gathered relating to the complex fraudulent scheme at issue here, became convinced that Kruglyak is in fact a "John Doe Defendant" named in the Complaint and directly involved in the fraudulent scheme with Zilberman – and that there is more than sufficient information supporting allegations that Kruglyak participated in the scheme as a RICO co-conspirator. Accordingly, Plaintiffs now seek leave to amend.

"After a Scheduling Order has been entered, motions to amend are subject to Rule 16(b) of Federal Rules of Civil Procedure 'good cause' standard…". Griffin v. Sirva, Inc., 291 F. Supp. 3d 245, 259 (E.D.N.Y. 2018). In determining whether good cause has been shown, "the primary consideration is whether the moving party can demonstrate diligence." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007); see also Joinnides v. Floral Park-Bellerose Union Sch. Dist., 2015 U.S. Dist. LEXIS 42933, at * 22 (E.D.N.Y. Mar. 31, 2015)("In other words, the party must show that despite its having exercised diligence, the applicable deadline could not have been reasonably met" (internal quotation omitted)). Once "good cause" to modify a scheduling order has been established, the analysis shifts to "whether the movant also meets the liberal standards of Rule 15." Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd., 2012 U.S. Dist. LEXIS 89388, at * 16 (E.D.N.Y. June 27, 2012). Finally, Fed. R. Civ. P. 21 governs specific instances where an amendment seeks to add parties and "it is generally accepted…that no material difference exists between the standards articulated by Rules 15(a) and 21, and, as such, where parties satisfy the requirements under [Rule 15(a)] for leave to amend, they

will generally be permitted to add parties under [Rule 21]." <u>Sanrio Co., Ltd. v. Epic Trading, Inc.,</u> 2005 U.S. Dist. LEXIS 46319, at * 2-3 (E.D.N.Y. July 21, 2005)(internal quotations omitted).

For the aforementioned reasons, Plaintiffs respectfully submit that Fed. R. Civ. P. 16(b)'s "good cause" standard is satisfied, as Plaintiffs have demonstrated that they were diligent in uncovering Kruglyak's involvement in the complex, fraudulent patient-brokering scheme at issue in this matter and promptly filed the instant motion upon obtaining sufficient information to allege Kruglyak's participation in the scheme as a RICO co-conspirator. In addition, given that the current Defendants have consented to the filing of the amended complaint, Plaintiffs respectfully submit that the liberal standards of Rule 15 are also satisfied.

We thank the Court for its continuing attention to this matter.

Very truly yours,

RIVKIN RADLER LLP

/s/ *Sean Gorton*
Sean Gorton, Esq.

cc:    All counsel via ECF