

WWW.RIVKINRADLER.COM

**SEAN GORTON**
(516) 357-3319
sean.gorton@rivkin.com

November 15, 2021

**VIA ECF**
Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Government Employees Insurance Co., et al. v. Zilberman, et al.*
Docket No. 1:20-cv-00209(FB)(RML)

Dear Magistrate Judge Levy:

We represent Plaintiffs (collectively "GEICO" or "Plaintiffs") in the above referenced matter. Pursuant to Local Rule 37.3(c), GEICO respectfully submits this letter motion seeking an Order enforcing a deposition subpoena Plaintiffs served on non-party Yakov Sirota – the purported owner of PFNCS Technical Support Corp. A copy of the pertinent subpoena and affidavit of service is annexed hereto as Exhibit "1", and a copy of PFNCS Technical Support Corp.'s incorporation papers is annexed hereto as Exhibit "2". The subpoena directed Mr. Sirota to appear for a deposition on November 12, 2021, however, Mr. Sirota neither appeared for the deposition nor contacted anyone at Rivkin Radler, LLP to request an extension of time to comply with the subpoena.

Mr. Sirota's testimony is highly relevant to GEICO's claims that Defendant Yakov Zilberman, D.C. ("Zilberman") and his various professional corporations obtained patients through the payment of impermissible kickbacks and subjected the patients to a host of medically useless diagnostic tests, including pain fiber nerve conduction studies ("PfNCS"). As set forth below, Mr. Sirota is an active participant with the Defendants in a $35 million check-cashing scheme fueling the payments of kickbacks, and is directly involved with the fraudulent PfNCS services provided by Zilberman and the PC Defendants

As the Court is aware, at issue in this litigation is the submission of millions of dollars of fraudulent billing seeking reimbursement for healthcare services purportedly provided by Zilberman and his various professional corporations – Yan Z Chiropractic, P.C., Maz Chiropractic, P.C., Sanford Chiropractic, P.C., and Dos Manos Chiropractic, P.C. (collectively, the "PC Defendants"). In particular, GEICO alleges, among other things, that Zilberman and the PC Defendants coordinated with Defendant Yakov Kruglyak ("Kruglyak") and others to obtain patients through the payment of impermissible kickbacks. See Docket No. 52 at ¶¶ 57-83. As further detailed in GEICO's Amended Complaint, after obtaining patients pursuant to the illegal kickback payments, Zilberman

and the PC Defendants subjected virtually every patient to a pre-determined fraudulent treatment protocol, which included the performance of medically useless PfNCS tests, without regard for the patients' individual symptoms or presentment. See id. at ¶¶ 84-87, 158-181.

The evidence that Zilberman and the PC Defendants coordinated with Kruglyak and others to obtain patients pursuant to the payment of illegal kickbacks is overwhelming. For example, Zilberman, the PC Defendants, and Kruglyak issued over $79,000.00 worth of checks to the Narain Law Firm, P.C., and the memo line on all of these checks is either blank or indicates that the payments were for "legal fees".[1] See Docket No. 46-4. However, the sole owner of the Narain Law Firm, P.C. has sworn, among other things, that: (i) the Narain Law Firm, P.C. has never provided Zilberman, the PC Defendants, or W.I.P. Holding, Inc. with legal services; and (ii) all of the checks were illegally cashed at a check-cashing facility in New Jersey – Cambridge Clarendon Financial Service, LLC d/b/a United Check Cashing ("Cambridge Clarendon") – using a false corporate resolution and forged letter from the Internal Revenue Service. See id.

On November 4, 2020, the manager of Cambridge Clarendon – Jerome Reed – provided a sworn statement indicating that all of the above-referenced checks, along with hundreds of thousands of dollars in additional payments, were exchanged for cash at Cambridge Clarendon by one individual – Alla Kuratova. A copy of Jerome Reed's November 4, 2020 declaration is annexed hereto as Exhibit "3".[2] However, on December 7, 2020, Ms. Kuratova appeared for a deposition and testified that she had never been to or even heard of Cambridge Clarendon, and had never been to any check-cashing facility in New Jersey. See Docket No. 42-4 at 16:13-18:20, 24:6-8. Given the inconsistencies between Mr. Reed and Ms. Kuratova's sworn statements, Plaintiffs deposed Mr. Reed on April 1, 2021, and Mr. Reed testified, among other things, that: (i) Ms. Kuratova had been cashing checks at Cambridge Clarendon "a couple of times a month" for between three and five years; and (ii) Cambridge Clarendon maintained Currency Transaction Reports documenting each instance that Ms. Kuratova cashed more than $10,000.00 worth of checks at Cambridge Clarendon. A copy of the relevant pages of Mr. Reed's deposition transcript is annexed hereto as Exhibit "4". Following Mr. Reed's deposition, Plaintiffs sought all of the documents related to Ms. Kuratova in Cambridge Clarendon's possession, and Cambridge Clarendon just recently finished producing responsive documents. See Docket No. 43; June 24, 2021 Order; Docket No. 53; Aug. 21, 2021 Order.

The documents produced by Cambridge Clarendon reveal that from approximately March 2017 through approximately May 2021: **(i) Kuratova has been to Cambridge Clarendon on over three hundred separate occasions; (ii) Kuratova has exchanged checks for cash on behalf of well over one thousand different companies, including a large number of no-fault healthcare providers; and (iii) Kuratova walked out of Cambridge Clarendon with over $35 million in**

---

[1] Kruglyak issued the payments through his company, W.I.P. Holding, Inc.

[2] In an effort to avoid burdening the Court, Plaintiffs have not included the exhibits to Jerome Reed's Declaration, which include hundreds of pages, with this submission. Should Your Honor wish to review the exhibits, Plaintiffs will, of course, provide a copy.

Honorable Robert M. Levy
Page 3

**cash**. A sample Currency Transaction Report produced by Cambridge Clarendon is annexed hereto as Exhibit "5".[3]

Regarding Plaintiffs' subpoena for Mr. Sirota's testimony, <u>Kruglyak, through W.I.P. Holding, Inc., issued over $50,000.00 worth of checks to Mr. Sirota's company and every single one of these checks was exchanged for cash at Cambridge Clarendon by Ms. Kuratova</u>. A copy of the pertinent checks issued by W.I.P. Holding, Inc. and produced by Cambridge Clarendon in this matter are annexed hereto as Exhibit "6", and a copy of W.I.P. Holding, Inc.'s bank signature card demonstrating that Kruglyak is the only signatory on the account is annexed hereto as Exhibit "7". <u>Moreover, PFNCS Technical Support Corp., which is owned by Mr. Sirota, issued over $15,000.00 worth of checks that were exchanged for cash at Cambridge Clarendon by Ms. Kuratova</u>. A copy of the pertinent checks issued by PFNCS Technical Support Corp. and produced by Cambridge Clarendon in this matter are annexed hereto as Exhibit "8". Accordingly, Plaintiffs wish to depose Mr. Sirota regarding the $35 million check-cashing scheme in which the Defendants and Mr. Sirota are active participants.

Finally, Zilberman and the PC Defendants issued payments to Mr. Sirota's company that appear to have been deposited into PFNCS Technical Support Corp.'s corporate bank account. Sample checks issued by the PC Defendants to PFNCS Technical Support Corp. are annexed hereto as Exhibit "9". Given Plaintiffs' allegations regarding the medically useless PfNCS tests purportedly administered by Zilberman and the PC Defendants, Plaintiffs also wish to depose Mr. Sirota regarding any PfNCS services provided for, or on behalf of, Zilberman and the PC Defendants. <u>See</u> Docket No. 52 at ¶¶ 84-87, 158-181.

This Court has consistently enforced subpoenas served on non-parties who fail to offer a sufficient excuse for non-compliance. <u>See</u> <u>Freund v. Weinstein</u>, 2009 WL 4065585 (E.D.N.Y. 2009) (ordering non-party witness to comply with subpoena as no adequate excuse provided for non-compliance); <u>Beruashvili v. Hobart Corp.</u>, 2006 WL 2289199, *1 (E.D.N.Y. Aug. 8, 2006); <u>Calabro v. Stone</u>, 224 F.R.D. 532 (E.D.N.Y. 2004) (same); <u>see also</u> <u>First Indemnity of America Ins. Co. v. Shinas</u>, 2005 WL 3535069 (S.D.N.Y. 2005) (requiring non-party to comply with subpoena); <u>Government Employees Ins. Co., et. al. v. Weinberger, D.C., et al.</u>, Dkt. No. 1:18-cv-06641(NGG)(RER) (E.D.N.Y.), at July 29, 2019 Order (ordering non-party to comply with subpoena).

Accordingly, given the relevance of Mr. Sirota's testimony to Plaintiffs' claims in this case, Plaintiffs respectfully request the Court issue an Order: (i) directing Mr. Sirota to appear for a deposition either remotely or at Rivkin Radler LLP, 926 RXR Plaza, Uniondale, NY 11566 within 21 days; and (ii) indicating that failure to appear for the deposition will result in sanctions, including a possible contempt order.

We thank the Court for its continuing attention to this matter.

---

[3] Again, in an effort to avoid burdening the Court, Plaintiffs have not included each of the over three hundred Currency Transaction Reports with this submission. Should Your Honor wish to review each of the Currency Transaction Reports, Plaintiffs will, of course, provide copies.

Honorable Robert M. Levy
Page 4

                                                  Very truly yours,
                                                  RIVKIN RADLER LLP

                                                  /s/ *Sean Gorton*
                                                  Sean Gorton, Esq.

cc:   All counsel via ECF

**Via U.S. Mail**
Yakov Sirota
444 Neptune Avenue
Apartment 2E
Brooklyn, NY 11224